(Summit County, Ohio, Court of Common Pleas, September Term, 1896.)

THE FALLS RIVET AND MACHINE CO. v. PULLMAN PALACE CAR CO.

*Sleeping Car Co.—Liability for money stolen out of passenger's clothing while asleep.*
1. Sleeping car companies are not liable as inn-keepers. Where valuables have been stolen out of the clothing of passengers while asleep, in such case the company is only liable where it is shown that there was been a want of ordinary care, and thus negligence is established on the part of the company. The fact of loss, alone, is not presumptive evidence of such negligence.

---

KOHLER, J. (Orally).

In this case, counsel for both parties waived a jury and submitted the issues to the court. I have given the case a great deal of attention, and have examined the numerous authorities to which counsel have referred the court. Counsel have aided the court very much by filing briefs and presenting the law very ably and fully.

The case derives its importance, not so much from the amount involved, which is only about sixty-seven dollars, but on account of the principle involved and the rights and interests of the traveling public on the one hand, and those of the sleeping-car company on the other. And while a great many cases have been tried and decided upon substantially the same question, I find no case where this question has arisen in the state of Ohio.

The plaintiff claims that on the 3rd day of May, 1895, an employe of that company, by the name of A. F. Taggart, coming from New York to Cleveland, purchased a first class ticket via The Pennsylvania Railroad, and at Philadelphia, at the office of the car agency, purchased a ticket for a berth in the sleeping car "Zeus," on the Pennsylvania train leaving Philadelphia at eight o'clock that evening, and that he had the lower berth, number three, in that car; that he had in his hip pocket, in a pocket-book which has been offered in evidence, sixty-seven dollars of the money of plaintiff, and that when he retired to his berth, he removed his clothing and his trousers, which he placed in the hammock or small net which swung at the backside of the berth by the window, and went to sleep, and in the morning, when he rose and went to the toilet room, he found that his money was gone.

The question is presented to the court, whether the Pullman Palace Car Company is liable for this money.

The defendant, in the first place, denies that it was carrying passengers, and set up in its answer that it was simply furnishing cars to the Pennsylvania Railroad Company, under a contract, by which the railroad company used the cars of the Pullman Palace Car Co.

I do not exactly understand the claim made by the answer in that respect, or that the liability is contested, on the ground that they were not liable for losses sustained in their cars by theft or otherwise. Suffice it to say, that so far as that contract is concerned, a copy of which is attached to a deposition in the case, I do not think passengers are bound to look out and examine what the contract is between the Pullman Palace Car Co., and the railroad company, in any case; that is a contract that they have between themselves, and it is deposited in the office of the Pullman Palace Car Co., where the public have no access to it and do not know anything about it, and cannot tell anything about it, and I do not believe the traveling public are obliged to look into the matter and ascertain who is really running those cars, and determine who is liable as between the two companies.

My judgment is that defendant was running those cars; that it was furnishing its own servants, its own porter and conductor, and conducting its own business, and if this money was lost in that car, under such circumstances as to create a liability, the Pullman Company is liable, without regard to the terms of the contract entered into by and between that company and the railroad company, of which the public had no notice whatever.

This raises the question as to the liability of the defendant. They claim on their side that they were liable simply for the want of ordinary care; that they had a porter on the car; that he was at his place where he could watch, and a conductor, and that therefore they were doing all they could, with ordinary care, to protect passengers, and to guard them from loss.

On the other hand, it is claimed by counsel for plaintiff, that the fact that this money was stolen, or lost, is evidence of itself of a want of ordinary care on the part of the defendant.

This question of fact as to the want of ordinary care has been submitted to the court, being a case in which the parties are entitled to a jury, but a jury was waived and the whole question, law and fact, was submitted to the court; and I would have been very glad indeed if I could have taken the sense of the jury upon this question of fact; however, it is before the court, and I have come to a conclusion with regard to it.

Sleeping car companies are comparatively of recent origin. The law is not yet very well settled as to the nature of their liability to the people they carry on their cars. It is a wonder to me that it has not been the subject of statutory regulation; it seems to me the time has come when their ought to be some law passed to define the rights of the sleeping car companies on one hand, and the public on the other, but no state has yet attempted it, or at least not perfected any law on that subject; because, when any law has been passed, it has always been attacked on the ground that the car companies were engaged in inter-state business, and that such legislation is expressly prohibited by the constitution. I notice, however, that one of our senators in congress introduced a bill upon the subject regulating their duties, and also regulating the rates they are to charge for their service. That act was not passed and therefore we are simply guided by the decisions of the courts, and they are valuable only as principles, because the facts differ somewhat in each case as to their liability.

In some cases it has been sought to make car companies liable simply as inn-keepers, on the ground that if a passenger enters the sleeping car, and his property is lost, they are liable as an inn-keeper—virtually making them insurers, or as a common carrier where he has the property in his hands for carrying it, and the actual custody and control of the pro-

perty. That liability, as lawyers all know, is a very strict liability in our state, and so far as inn-keepers are concerned, was modified by statute, but it is of ancient origin, and is a very strict liability indeed, and in a case in Nebraska, the supreme court held that they were liable as inn-keepers, and that all that a passenger was bound to do, was to show that he had certain property or money in his possession when he entered the car, and that it was lost when he got up in the morning, and that fixes the liability upon a sleeping-car company precisely as it would upon the proprietor of an inn.

The weight of authority, however, is against that proposition.

The cases are very numerous in which the courts have drawn the distinction that the sleeping-car company is not to be held as an inn-keeper, and that it can be made liable only where it is shown to the jury that there has been a want of ordinary care; or, in other words, if negligence is established on the part of the sleeping car-company, that the mere fact of a loss alone is not presumptive evidence of such negligence,— there must be something in addition to that. I think the weight of authority establishes that proposition where those cases have been decided throughout the country.

It is claimed, and with considerable force, that if a sleeping-car company is liable in such a case as that, there would be danger of parties who enter a sleeping-car, confederating together, and in the morning when they got up say "I have lost $100.00, I have lost $200.00," or any sum suitable for a man to carry for his traveling expenses, and that would make the company liable, and innumerable frauds might be perpetrated upon a sleeping-car company under those circumstances, and the company would have no power to protect itself, because it could not say to the passengers, "You did not have this money, or we had no knowledge that you had this money" and the company would be entirely bound by the oath of a party who was attempting to perpetrate a fraud upon it by setting out that he had lost property during the night, while traveling on the defendant's car.

On the other hand, if it is claimed that one must prove negligence on the part of the sleeping-car company, it is almost in nine cases out of ten, impossible for a man who has lost property in a sleeping-car, to establish such negligence. He buys his ticket in the evening, takes his berth, goes to sleep,—that is what the ticket is sold for; his berth is furnished him, and he is expected to go to sleep, and when he is there, he doesn't know what is going on, he cannot tell whether the porter is at his post of duty, where the conductor is; he can't tell who is entering that car, or where the stops are to be made, or how long the car stops; he is helpless, and in the car of the company, and in the morning his money is gone,—in nine cases out of ten he can hardly show that there has been any want of care,—he cannot tell whether the porter has been asleep or awake, or out of the car, or whether there has been that attention given to him that should have been, and in most all of these cases that I have examined, it has been found that the evidence stopped there; the plaintiff said he had $10.00 in his pocket when he went to sleep last night, and this morning it is gone,—so I simply say that on the other hand it is almost impossible for a man who has been robbed, even by the conductor or by the porter in a sleeping-car, to show there was actual negligence on the part of the company, its agents and servants, while he was sleeping in the berth.

But I am bound to take this law as I find it, and I do not feel like establishing any new rule on the subject, and I hold therefore in accordance with the weight of authority, the decided weight of authority set out in innumerable cases, and I will simply read a few of them.

"It is now firmly established, with the practically unanimous con-currence of text writers and courts, that sleeping-car companies are not subject to the liability of common carriers or of inn-keepers." 26 Am. St. Rep. page 332, and cases cited therein. And I think perhaps that is the safe rule.

This brings me to the question, whether, under the circumstances of this case, there has been made a showing of a want of ordinary care on the part of the sleeping-car company, its agents and servants, by which this money was lost.

In most of these cases, money was taken out from under the pillow;—a man would have his money in his vest pocket and put it under his pillow; in this case it was taken out of the pocket book, taken out of the hip pocket of the trousers, and those trousers were in that net; it is quite reasonable to suppose that the money was not stolen by some other passenger reaching over back of the curtain, where he could not be seen, and taken in that way, because he would have to reach over the sleeping man, get into his trousers and take out the money. I think it is reasonable to infer from the place where this money was, when he left it there and went to sleep, that the berth was approached by somebody on the outside, and who reached over through the curtains and took the money from his pocket in that way, and if the porter was at his place, which, in the depositions, is designated at the end of the aisle where he blacks boots, and where he has a full view of the aisle and can see anybody approaching any berth, and under the rules and regulations of the sleeping-car company that is his place where he is to stay and watch, it looks to me that if the porter was at that place at that time during the night watching the car as was his duty, and that money had been taken, as I think it must have been taken by somebody approaching from the aisle and not by some fellow passenger reaching back of the curtain and taking it out from under his pillow, it seems to me it could have been seen by the porter.

So far as the porter is concerned, you cannot tell whether the porter took it, or the conductor took it, or somebody else among the passengers,—certainly somebody stole this money, and so far as the passengers are concerned, they have nothing to do with the choice of a porter, they do not know whether he is honest or dishonest, and the same may be said about the conductor; the sleeping-car company selects these men, and it is presumed that they know who they are, and select faithful and honest men for their positions, men who will not only be honest, but men who are faithful and watchful and careful to see that passengers are not disturbed and their property or money taken form them, and therefore I think they ought to be held to some liability in that respect. In some of the cases cited to me by counsel, it was shown that porters were required to be on duty unreasonable hours, and because of long hours and over-work, they dropped asleep, and while they were asleep, money was stolen.

In some cases it is held that where the money was lost, and it was apparent that it was taken by somebody approaching the berth from the outside where the porter could have a view of it if he had been on watch, that was evidence of negligence.

In Lewis v. New York S. C. Co., 143 Mass. 269, it was held that "proof that the porter was found asleep in the early morning, and that he was required to be on duty for thirty-six hours continuously, which included two nights, was sufficient evidence of negligence on the part of the sleeping-car company to justify the submission of the question to the

jury. In Carpenter v. New York R. R. Co., 124 N. Y. 53, i t was held that "evidence that the only person employed on the sleeping-car, which ran over an important thoroughfare, and made stops at several large cities during the night, was a man who acted as conductor and porter, and blacked the passengers' shoes for his own profit, and that this man's closet was at one end of the car, and so situated that he could not from it have a full view of the aisle, was sufficient, in the absence of explanation or evidence by the defendant, to require the question of negligence to be submitted to the jury. And in Pullman Palace Car Co. v. Smith, 23 Am. St. Rep. 356, the company was held liable for the neglect of its servants to awaken the plaintiff and his wife in time to enable them to dress and get off the train at the station of their destination, and for causing them to get off the train at a water-tank half a mile from the station, before day-light, on a damp, cold, morning in winter, where they were compelled to stand for a long time in the rain, mud and cold, not knowing where the station was, the train having moved off before they ascertained that they had not reached the station.

"From the mere fact of loss of property by a passenger, while traveling in a sleeping-car, the negligence of the company cannot be presumed. There must be some proof of negligence to establish its liability. The mere proof of loss of money by a passenger, while occupying a berth, does not make out a prima facie case; and to sustain a recovery, some evidence of negligence on the part of the defendant must be given." 124 N. Y. 53. But see Railroad Co. v. Walrath, 38 Ohio St. 461, where it was held that upon proof of injury sustained by a passenger on a railroad train, by the fall of a berth in a sleeping-car, and that the passenger was without fault, a presumption arises that the railroad company is liable."

Counsel for the plaintiff in this case insisted that the case in the 38 Ohio St. is in point, and the claim is, that the fact that the money was lost is prima facie evidence of negligence. In that case a man was riding in the sleeping-car in the day-time, and the upper berth dropped down upon his head and injured him severely. It probably was not properly adjusted, or the fastening was defective, or something of that kind, and in that case our supreme court held that that was evidence of negligence in and of itself, because something must have been wrong; but I can hardly make that case the same as this, and it would be going farther I think than all other cases that I have examined go to show from the mere fact of loss alone that you can deduce the inference of negligence.

This employe, Mr. Taggart, the party who really lost this money, although it was the money of the plaintiff company, testifies that in the morning, towards daylight, he got up, and went to the toilet room, and returned to his berth, and went to sleep, and did not awaken again until the train arrived at Pittsburgh in the morning, and he swears that when he got up in the morning first and went to the toilet room, the porter was not in sight; that he went by the place where the porter says he sat and watched, and he avers that he did not see him there at all, and I do not know that the porter denies this in any way.

The porter, however, in his deposition, testifies that he was on duty all night in his place and watching that aisle; and it is for the court to find, as between these two parties, who is telling the truth.

I am inclined to think that if the porter was at his place of watching, where it was his duty to watch, and if he was not sufficient, it was the duty of the sleeping-car company to furnish somebody to assist him to watch that aisle, and that money was taken, as I think it was, from the back part of that berth, it could have been seen with reasonable and ordinary watchfulness.

And I am inclined to find, and I do find from this evidence, that said money, if it was taken, and there is no denial or contradiction here of the fact that this money was lost that night, that the porter, if he was at that place where he says he was, and the money was taken, as I think it was, he could have seen the thief approach that berth, and take the money, and could have prevented the loss, if he had been exercising the care which he should have exercised under the circumstances. Without taking any further time upon this matter of fact, and I have taken some pains and perhaps more than I ought to, to have decided it, that the defendants, selling those berths to sleeping passengers, are bound to exercise due vigilance, are bound to employ honest and sufficient porters; they are bound to give them such hours that they will be able to sit up at night a proper length of time and watch the aisle, while passengers are asleep, and that where money is stolen, either by the porter or the conductor, or by some other passenger approaching that berth from the outside, where the thief could be seen, they should be held liable, and I place the loss in this case upon the want of ordinary watchfulness and care upon the part of the sleeping-car company, under the evidence submitted to the court under these circumstances. I do not hold them liable as inn-keepers, nor as common carriers. I hold them liable under the ordinary rule, employing servants, they should employ a sufficient number, and giving them ample time to sleep, and ample time to discharge their duties: but they should be held liable for a loss that could have been detected, if ordinary care and vigilance had been exercised.

Messrs. Oviatt, Allen & Cobbs, for Plaintiff.

Messrs. Otis & Otis, for Defendant.